IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| GERALDINE WRAY, | : | |
|---|---|---|
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 09-5792 |
| v. | : | |
| | : | |
| MICHAEL C. PAINTER, | : | |
| | : | |
| Defendant. | : | |

OPINION

Slomsky, J.                                                                                                                     March 28, 2011

I.     INTRODUCTION

This case arises out of what Plaintiff Geraldine Wray claims was an illegal arrest and seizure of her dog by Defendant Michael Painter on February 6, 2009. About a year prior to this seizure, Plaintiff entered into an oral agreement with Maurisa Payne, who is not a party to the present litigation, to train, socialize, and medically certify her pedigree English Spaniel show dog named "Razzle Dazzle." Mrs. Payne gave custody of Razzle to Plaintiff in accordance with the agreement. Following this initial agreement, the relationship between Plaintiff and Mrs. Payne deteriorated. On numerous occasions, Mrs. Payne requested to see Razzle, but Plaintiff failed to allow it. In order to retrieve her dog, on February 6, 2009 Mrs. Payne contacted the Police Department of the Borough of Hamburg in Berks County, Pennsylvania. Defendant Painter was the Chief of Police of the Borough of Hamburg. Defendant met with Mrs. Payne and thereafter seized the dog from Plaintiff and returned it to Mrs. Payne. The circumstances surrounding the seizure of the dog form the factual basis of this lawsuit.

Before the Court are Cross Motions for Summary Judgment (Doc. Nos. 24, 26). Plaintiff

1

moves for summary judgment on liability only and claims that the sole triable issue is the amount of damages to which she is entitled. (Doc. No. 25.) Defendant asserts he is entitled to summary judgment because (1) Plaintiff has failed to establish a property interest in the dog—the subject of the illegal seizure claim—and therefore cannot establish that the seizure was unlawful, and (2) Defendant acted reasonably as a matter of law and is thereby protected by qualified immunity. For reasons that follow, the Court will deny both Motions in their entirety.

## II.     PROCEDURAL HISTORY

On December 7, 2009, Plaintiff initiated this lawsuit against Defendant Painter by filing a Complaint (Doc. No. 1) pursuant to 28 U.S.C. § 1983, alleging an "illegal arrest and seizure" in violation of the Fourth and Fourteenth Amendments. On December 30, 2009, Defendant filed a Motion to Dismiss and Memorandum of Law in Support of the Motion. (Doc. Nos. 4, 5.) Plaintiff filed a Response in Opposition to the Motion to Dismiss on January 11, 2010. On March 5, 2010, Judge Thomas M. Golden, to whom this case had been assigned, granted the Motion "to the extent that Plaintiff allege[d] a claim under the Fourteenth Amendment and [sought] punitive damages from Defendant in his official capacity." (Doc. No. 8.) Judge Golden denied the Motion in all other respects, permitting the Section 1983 claim to proceed insofar as Plaintiff alleged a Fourth Amendment violation and sought punitive damages against Defendant in his individual capacity. (Doc. Nos. 7, 8.) On March 18, 2010, Defendant filed an Answer to the Complaint. (Doc. No. 10.)

On August 11, 2010, this case was assigned to this Court for all further proceedings. (Doc. No. 20.) On December 15, 2010, Plaintiff filed a Motion for Partial Summary Judgment and a Brief in Support, including a Statement of Undisputed Facts and several exhibits (Doc.

Nos. 24, 25). The same day, Defendant filed a Motion for Summary Judgment and Memorandum of Law in Support of the Motion (Doc. No. 26). On January 5, 2011, each party submitted a Response in Opposition to the Motion for Summary Judgment of the opposing party (Doc. Nos. 27, 28, 29). The Court held oral argument on the Motions on February 22, 2011. The Motions for Summary Judgment are now ripe for disposition.

## III. STATEMENT OF FACTS

### A. Events Preceding the February 6, 2009 Seizure of the Dog

Defendant Michael C. Painter is the Chief of Police of the Borough of Hamburg, Berks County Pennsylvania. (Doc. No. 25-1 ¶ 2; Deposition of Michael Painter, Doc. No. 26, Ex. E at 5:19-6:4.) On February 6, 2009, Defendant met with Maurisa Payne, who wished to lodge a formal complaint with the police department about a dog, an English Spaniel "show dog" named Razzle Dazzle, that she claimed was improperly taken from her. (Doc. No. 25-1 ¶ 3; Doc. No. 26, Ex. E at 8:11-23.) During her meeting with Defendant, Mrs. Payne explained that she had been friends with Plaintiff Geraldine Wray for eight years. (Deposition of Maurisa Payne, Doc. No. 26, Ex. C at 16:10-18:1; Doc. No. 26, Ex. E at 14:11-15:15.) In April 2008, Plaintiff and Mrs. Payne agreed that Plaintiff would train, socialize, and medically certify Razzle. (Doc. No. 26, Ex. C at 21:4-24:10, 26:11-30:7; Doc. No. 26, Ex. E at 13:25-14:16.) Mrs. Payne transferred possession of the dog to Plaintiff in accordance with the agreement.

Following Mrs. Payne's initial agreement with Plaintiff, their relationship deteriorated. (Doc. No. 26, Ex. C at 30:8-42:6.) On numerous occasions Mrs. Payne requested and made plans to see her dog, but each time Plaintiff failed to appear with the dog as planned. (Doc. No. 25-1 ¶ 4; Doc. No. 26, Ex. C at 30:8-42:6; Ex. E at 14:17-14:16.) When Mrs. Payne met with

Defendant on February 6, 2009, she produced documentation from the American Kennel Club ("AKC") showing that the dog was registered in her name alone and an email in which Plaintiff acknowledged that Razzle was not her dog.[1] (Doc. No. 26, Ex. C at 47:1-11; Ex. E at 14:17-17:23; see also Doc. No. 26, Ex. B at 1.)

After taking this information from Mrs. Payne, Defendant drove to the home of Plaintiff. (Doc. No. 26, Ex. E at 18:6-8.) When he knocked on the door no one answered. (Id. at 18:9-10.) However, in response to Defendant's knock, two English Spaniels began barking, and Defendant was able to see both dogs through a large window at the front of the house. (Id. at 18:9-19:4.) Defendant deduced that one of the dogs was Razzle. (Id. at 19:1-8.)

Having concluded that Plaintiff was not at home, Defendant asked Mrs. Payne, who had followed him to Plaintiff's home in her own car, for Plaintiff's phone number, which she gave him. (Doc. No. 26, Ex. C at 58:5-9.) Mrs. Payne stood next to Defendant while he called Plaintiff. When Defendant reached Plaintiff by telephone, he identified himself and informed Plaintiff that he had information that a dog named Razzle belonging to Mrs. Payne was in her possession and that he intended to retrieve the dog and return the dog to Mrs. Payne. (Doc. No. 26, Ex. C at 59:11-14; Ex. E at 20:16-18.) In their depositions, both Plaintiff and Mrs. Payne stated that during this phone conversation, Defendant informed Plaintiff that if she failed to produce the dog he would seek an arrest warrant. Plaintiff recalled that Defendant said he would seek a felony arrest warrant. (Deposition of Plaintiff, Doc. No. 26, Ex. D at 14:6-8; Ex. C at

---

[1] With respect to Plaintiff's statement in the email to Mrs. Payne about her ownership of the dog, Plaintiff explained that she was referring to the fact that she did not own Razzle "on paper," and maintained that she co-owned Razzle pursuant to her oral agreement with Mrs. Payne. (Doc. No. 26, Ex. C at 26:13-27:17.; Doc. No. 29, Ex. A.)

4

60:20-22.) During his deposition, Defendant stated that he did not tell Plaintiff he was investigating a felony or otherwise use the word "felony." (Doc. No. 26, Ex. E at 21:6-15.) He further stated, "I didn't tell her anything about a felony or an arrest. I didn't know what was going to happen at that point." (Id.)

In response to Defendant's questions regarding the location of the dog, Plaintiff stated that the dog ran away. (Doc. No. 26, Ex. C at 59:19-60:1; Ex. D at 15:3-6; Ex. E at 21:24-22:1.) Defendant asked Plaintiff whether she had filed a police report about the missing dog and Plaintiff responded she had not. (Doc. No. 26, Ex. C at 59:19-60:1; Ex. D at 14:13-17, 15:3-11; Ex. E at 21:24-22:3.) At this point the conversation ended. Plaintiff then called the Hamburg Police Department to confirm that the person with whom she had spoken was a law enforcement official and not "Ms. Payne putting somebody up to doing this." (Doc. No. 26, Ex. D at 15:23-25.)

Defendant and Mrs. Payne returned to the Hamburg Police Station. (Doc. No. 26, Ex. C at 61:15.) Shortly thereafter, Plaintiff called Defendant and again stated that the dog was missing. (Id. at 62:14.) Defendant then informed Mrs. Payne he was unsure if he would be able to retrieve the dog that day and suggested that Mrs. Payne return to her home, which she did. (Id. at 63:3-64:19.)

Later that day, Defendant compiled the information given to him from Mrs. Payne. After creating a sequence of events and reviewing his notes, Defendant decided he would file criminal charges. (Doc. No. 26, Ex. E at 26:2-9.) He typed up an Affidavit of Probable Cause, charging Plaintiff with theft by unlawful taking and receiving stolen property. Given the estimate of the value of the dog as a "show dog," the charges would be classified as felonies under the

5

Pennsylvania Crimes Code. (Id. at 27:7-12.) In his deposition, Defendant explained that he did not proceed to file the charges with a local judge. Had he filed the charges, he would have obtained warrants for the arrest of Plaintiff and for the search of her home. He gave two reasons for not filing the charges and creating a court case. (Id. at 31:9.) First, he stated that he did not need a warrant to arrest Plaintiff on felony theft charges because he had probable cause to arrest her. (Id. at 31:9-18.) Second, he had "compassion for somebody that had a dog." (Id. at 31:24.) If he filed the felony theft charges, they would appear on Plaintiff's record; if he could avoid that from happening, he would try to do so. (Id. at 31:19-33:17.)

B. **Defendant's Account of the Events of the Evening of February 6, 2009**

Later that evening, Defendant returned to Plaintiff's home wearing his police uniform. (Doc. No. 26, Ex. E at 27:15-16; 33:20; 43:10-11.) One or two of his colleagues, Officer Cramer and possibly Officer Doug Williams, followed Defendant in a separate vehicle.[2] (Id. at 42:12-43:11.) When he arrived at Plaintiff's home, he and Officer Cramer approached the front door and Defendant knocked. (Id. at 42:5-8.) Defendant could not recall who answered the door, but stated that he was "kind of thinking" it was Plaintiff's husband. (Id. at 42:21-43:1.) Whoever it was, that person invited him in to the "vestibule area" of the home. (Id. at 42:12.)

Once inside, Defendant spoke with Plaintiff and her husband, explaining that he had a warrant for her arrest.[3] (Doc. No. 26, Ex. E at 44:11-14.) He explained that he would take

---

[2] Defendant stated that he knew that Officer Williams was on duty, but did not recall whether he followed Defendant to Plaintiff's home. He recalled that when he approached Plaintiff's home only Officer Cramer was present, and that "Officer Doug Williams might have just been on duty working the shift." (Doc. No. 26, Ex. E at 27:15-28:1.)

[3] He told Plaintiff he had a warrant so that she and her husband would understand that he had all the papers necessary to arrest her. (Doc. No. 26, Ex. E at 44:11-14.) In fact, he had no

6

Plaintiff to arraignment court and that Plaintiff's husband could come too, but he would have to follow in his own vehicle. (Id. at 44:14-20.) Plaintiff was asked to get her coat. (Id. at 44:21-23.) Plaintiff had offered to show Defendant paperwork as proof that she was lawfully in possession of the dog. Since she had lied to Defendant regarding the whereabouts of the dog, Defendant assumed the paperwork was fabricated and refused to see it. (Id. at 34:23-35:6.)

Next, Plaintiff and her husband spoke about what they should do. (Id. at 44:23-25.) Defendant recalled:

> [Plaintiff's] husband said to her let's just give him the – he said to her, go upstairs and get the dog and we'll contact the attorney and stuff and take care of this civilly. That's when I said to both of them that changes the scenario now. . . . I said, now you are admitting that the dog is here in the house and it is upstairs. . . . I said, now you have the stolen property in your house. I am going to have the officer stand outside. I'll go back, get my search warrant, come back and I'll retrieve the dog anyhow. How do you want to play it? I gave them the option. How do you want to play it? And they agreed to go up and get the dog, which they did.[4]

(Id. at 35:7-25.) Defendant took the dog to the police station and called Mrs. Payne, who retrieved the dog the following morning without incident. (Id. at 50:2-15.)

Defendant stated that if Plaintiff had told him to leave, he would have left but that she would have had to come with him.[5] (Doc. No. 26, Ex. E at 45:9-21.) When questioned whether Plaintiff was in his custody at any point, Defendant stated that he never placed his hands on

---

such warrant because it was never presented to a court for approval.

[4] Again, Defendant had no such search warrant. No warrant was presented to a court for approval.

[5] It is not clear from his deposition where Defendant would have taken Plaintiff, but presumably he would have taken her before a court or to the police station.

7

Plaintiff and never handcuffed or placed her in physical custody. (Id. at 45:22-46:13.)

### C. Plaintiff's Account of the Events of the Evening of February 6, 2009

Plaintiff recalled a different version of the events of the evening of February 6, 2009. At about at 7:00 p.m., Plaintiff heard pounding at her door. (Doc. No. 26, Ex. D at 18:7-8; 23:13-14.) In reaction to the pounding and thinking Mrs. Payne was at the door, Plaintiff took Razzle from the kitchen to her bedroom and closed the door. (Id. at 23:12-24:13.) She then proceeded to open the front door to her home. Plaintiff explained that:

> As I had my hand on the door opening the door, he [referring to Defendant] must have had his hand on the other side of the doorknob. Because when I turned it, the door pretty much opened up and he was in my hallway.

(Id. at 30:1-4.) Plaintiff saw three uniformed police officers, one of which was Defendant, whom she recognized from seeing him around town. (Id. at 19:16-24.)

As Defendant was entering, he identified himself as Chief Painter and said that he had a felony theft warrant for her arrest. (Id. at 30:8-13.) At that moment, two other officers came in the house as well. (Id. at 30:14-17.) She kept trying to tell Defendant that she co-owned the dog, she did not steal the dog, and that she had vet records to prove it, but Defendant kept speaking over her saying "tell it to the Judge," and "[y]ou are going to jail." (Id. at 31:17-33:11.) In her deposition, Plaintiff stated that she informed Defendant that she had an email from Mrs. Payne showing that she had been given co-ownership of the dog. She also had the dog's license and vet records. She never provided these records to the police department after they left her house because she "figured they got what they wanted," referring to the subsequent seizure of the dog. (Doc. No 26, Ex. D at 37:16-24.)

Plaintiff was informed that she could avoid going to jail if she gave him the dog, but

8

Plaintiff refused. (Doc. No. 26, Ex. D at 33:13-16.) She was told to get her coat, which she did. (Id. at 33:16-19.) When Plaintiff asked to see the papers Defendant was holding, Defendant responded "when you go to jail." (Id. at 33:24- 34:1.) At this point, Plaintiff's husband told Plaintiff that she could lose her job if she was arrested and that they were not in a position where she could not work. (Id. at 33:9-15.) Following a conversation with her husband, Plaintiff gave the dog to Defendant. (Id. at 33:17.)

Plaintiff was never handcuffed or touched by the officers, and she was never removed from her home. (Id. at 35:23-36:10.)

**IV.   STANDARD OF REVIEW**

Granting summary judgment is an extraordinary remedy. Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 770 (3d Cir. 2009). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Liberty Lobby, 477 U.S. at 247-49.

In ruling on a motion for summary judgment, the Court must view the evidence, and make all reasonable inferences from the evidence, in the light most favorable to the nonmoving

9

party. Chambers v. School Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009); Bouriez, 585 F.3d at 770. Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the nonmoving party's evidence over that presented by the moving party. Liberty Lobby, 477 U.S. at 255.

When the parties file cross-motions for summary judgment, as they have here, the summary judgment standard remains the same. Appelmans v. City of Philadelphia, 826 F.2d 214, 216 (3d Cir. 1987). "If review of [the] cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts." Hussein v. UPMC Mercy Hospital, No. 09-547, 2011 WL 13751, at *2 (W.D. Pa. Jan. 4, 2011) (quoting Transguard Ins. Co. of Am., Inc. v. Hinchey, 464 F. Supp. 2d 425, 430 (M.D. Pa. 2006) (citing Iberia Foods Corp. v. Romeo, 150 F.3d 298, 302 (3d Cir. 1998))).

## V. DISCUSSION

The Cross-Motions for Summary Judgment before the Court present three principal issues that the Court must resolve. They are: (1) whether Defendant is entitled to qualified immunity; (2) whether either party is entitled to summary judgment in his or her favor; and (3) whether there exists evidence in the record from which a reasonable jury could conclude that Plaintiff is entitled to punitive damages. The Court will address each issue in turn.

### A. Qualified Immunity

In his Motion for Summary Judgment, Defendant asserts he is entitled to qualified immunity because he did not violate a clearly established law of which a reasonable officer in his position would have known. For reasons that follow, the Court finds that Defendant is not

entitled to qualified immunity for his conduct in this case.

The law regarding qualified immunity is well-established. As the Third Circuit stated in Lamont v. New Jersey:

> Government officials performing discretionary functions are immune "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). To determine whether an officer is qualifiedly immune from suit, we ask (1) whether the officer violated a constitutional right, and (2) whether the right was clearly established, such that "it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 201-02, 121 S.Ct. 2151 (2001); see also Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987) (holding that, for purposes of the second question, the right must have been clearly established in a particularized sense, such that "a reasonable official would [have understood] that what he [wa]s doing violate[d] that right").

No. 09-1845, 2011 WL 753856, at *4 (3d Cir. Mar. 4, 2011). A Court is permitted to exercise discretion in deciding which of the two prongs of the qualified immunity test should be addressed first in light of the circumstances. Id. (citing Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 815-16 (2009)). Here, the Court will first address whether under the facts described above Defendant violated Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure, and second whether this right was clearly established at the time of the alleged violation, such that it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. In doing so, the Court will view the facts in the light most favorable to Plaintiff as the non-moving party on the qualified immunity claim. Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010).

1. **Fourth Amendment Violation**

Under the first prong of the qualified immunity analysis, the Court must determine whether there has been a constitutional violation. Saucier, 533 U.S. at 201. "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity." Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002). Here, there exists sufficient evidence for a jury to find that Plaintiff has established a Fourth Amendment violation.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Fourth Amendment primarily seeks to protect an individual's reasonable expectation of privacy in the place searched. Minnesota v. Carter, 525 U.S. 83, 88 (1998). An expectation of privacy must be "one that society is prepared to recognize as 'reasonable.'" Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). "Without question, the home is accorded the full range of Fourth Amendment protections." Lewis v. United States, 385 U.S. 206, 211 (1966).

Absent exigent circumstances or consent, a warrantless entry into a home for the purpose of search or seizure of property or a person is presumptively unconstitutional under the Fourth Amendment. Payton v. New York, 445 U.S. 573, 576 (1980). "Where there is coercion there cannot be consent." Bumper v. North Carolina, 391 U.S. 543, 550 (1968). Therefore, where consent to entry is based on a lie regarding the existence of a warrant—an officer states he has a warrant when he does not—the lie vitiates the consent to entry. Id. Thus, the officer's

warrantless entry is without consent and is unconstitutional. Payton, 445 U.S. at 576.

In the instant case, according to Plaintiff's testimony at her deposition, Defendant forced his way into Plaintiff's home and while doing so stated that he had a warrant for her arrest.[6] Both Plaintiff's consent to Defendant's entry and her consent to the seizure of the dog were premised on the existence of a warrant for her arrest. Defendant did not have a warrant for her arrest. In fact, Defendant concedes that at some point he informed Plaintiff that he had warrants to arrest her (Doc. No. 26, Ex. E at 44:11-14) and to search her home (Id. at 35:7-25 ), but in fact, these warrants did not exist. Therefore, consent to enter and seize the dog was obtained through coercion derived from the lie, which vitiates the consent. Since Defendant lacked consent or exigent circumstances to support the entry or seizure of the dog, his warrantless entry into Plaintiff's home for the purpose of arresting Plaintiff or seizing the dog is presumptively unconstitutional under the Fourth Amendment. Payton, 445 U.S. at 576. Thus, Plaintiff has produced sufficient evidence for a reasonable jury to find that Defendant violated her rights under the Fourth Amendment.

### 2. The Right Was Clearly Established at the Time of the Violation

Under the second prong of the qualified immunity test, the Court must determine whether the right violated was clearly established at the time of the violation. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." Saucier, 533

---

[6] Defendant concedes that he did not tell the truth to Plaintiff about the existence of a warrant. He explains that the untruthfulness was necessary to communicate to Plaintiff and her husband that Defendant had all the papers necessary to arrest her. (Doc. No. 26, Ex. E at 44:11-14.) However, the reason for a lie does not negate the effect of the lie. The lie still vitiates Plaintiff's consent to Defendant's entry into her home. Bumper, 391 U.S. at 550.

U.S. at 202. "The contours of the right [at issue] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (quoting Saucier, 533 U.S. at 201).]

It is well-established that a warrantless entry into a home for the purpose of search or seizure of property is unconstitutional where the entry is unaccompanied by consent or exigent circumstances. Payton, 445 U.S. at 576. A reasonable officer in the position of Defendant would know that lying to a person about the existence of a warrant to gain consent to enter a residence violates the Fourth Amendment. Breitbard v. Mitchell, 390 F. Supp. 2d 237, 250 (E.D.N.Y. 2005) (concluding that defendant police officer was not entitled to qualified immunity on the Section 1983 Fourth Amendment claim because "no officer could have reasonably concluded that it was lawful to lie to plaintiff in order to gain entry into her house–without a warrant or her consent and absent exigent circumstances").

Although Defendant is correct that "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law,'" the standard is an objective one–a *reasonable* officer in the position of Defendant. Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 537 (1991). Even if Defendant believed that he was permitted to lie to Plaintiff about having a warrant in order to procure her consent to his entry, this belief was unreasonable. As noted, "no officer could have reasonably concluded that it was lawful to lie to plaintiff in order to gain entry into her house–without a

14

warrant or her consent and absent exigent circumstances." Breitbard, 390 F. Supp. 2d at 250.[7]

Since there exists sufficient evidence from which a reasonable jury may find that Defendant violated Plaintiff's Fourth Amendment right and that the right violated was clearly established at the time of the violation, Defendant is not entitled to the protection of qualified immunity. Saucier, 533 U.S. at 201-02.

B. **Genuine Issues of Material Fact That Preclude Summary Judgment in Favor of Either Party**

In their Cross-Motions for Summary Judgment, each party contends that it is entitled to summary judgment in its favor. Each party responds to the opposing party's Motion by stating that there exist genuine issues of material fact which preclude granting summary judgment in favor of the opposing party. (See, e.g., Doc. No. 27 ¶ 15; Doc. No. 28 ¶ 5.) The Court finds two genuine issues of fact which preclude summary judgment in favor of either party. They are: (1) whether Plaintiff had an ownership interest in the dog; and (2) whether Plaintiff consented to Defendant's entry into her home.

1. **Ownership of the Dog**

Whether Plaintiff had an ownership interest in the dog is in dispute. Defendant contends that the evidence conclusively establishes that Plaintiff did not have an ownership interest in the

---

[7] Defendant asserts that because he had probable cause to arrest Plaintiff, he acted reasonably under the circumstances. An officer who has probable cause may arrest an individual without a warrant when in a public place. See United States v. Massac, 867 F.2d 174, 175 (3d Cir. 1989). However, given the heightened constitutional protection of the privacy of the home, the Supreme Court requires a warrant to enter an individual's home for the purpose of search or seizure in the absence of exigent circumstances or consent. Payton, 445 U.S. at 576. Therefore, although Defendant may have had probable cause to arrest Plaintiff, justifing her arrest in a public place, he violated her Fourth Amendment right when he entered her home without a warrant or consent to arrest her or to seize the dog.

dog. The dog's AKC registration supports this contention because the dog is registered in the name of Mrs. Payne only. (Doc. No. 26, Ex. C at 47:1-11; Ex. E at 14:17-17:23; see also Doc. No. 26, Ex. B at 1.) Further, in an email to Mrs. Payne, Plaintiff admits the dog is not hers and offers to buy the dog. (Doc. No 26, Ex. B.) Plaintiff counters that while she does not own the dog "on paper," her oral agreement with Mrs. Payne gave her co-ownership of the dog. (Doc. No. 26, Ex. C at 26:13-27:17.; Doc. No. 29, Ex. A.) Pursuant to the agreement, Plaintiff had lawful possession of the dog.

As the foregoing evidence shows, there is a genuine issue of fact regarding Plaintiff's ownership of the dog. This issue of fact is material to the Fourth Amendment analysis. Plaintiff alleges Defendant violated her Fourth Amendment right to be free from unreasonable seizure when he interfered with her lawful possession of the dog. Whether Plaintiff is able to establish a Fourth Amendment violation depends in part on her ability to establish that Defendant meaningfully interfered with her possessory interest in the dog. Soldal v. Cook County, 506 U.S. 56, 61 (1992). Whether Plaintiff had a possessory interest in the dog is in dispute. Thus, this genuine issue of fact is material to the Fourth Amendment analysis and precludes summary judgment in favor of either party.

### 2. **Plaintiff's Consent to Defendant's Entry Into Her Home**

Defendant and Plaintiff present different accounts of what happened during their meeting on February 6, 2009. Defendant contends he was invited into Plaintiff's home. (Doc. No. 26, Ex. E at 42:12-43:1.) Plaintiff asserts Defendant entered without her consent since the consent she gave was predicated on Defendant's lie that he had a warrant for her arrest. (Doc. No. 26,

Ex. D at 30:1-13.) The conflicting testimony of the parties reveals a genuine issue of fact regarding whether Plaintiff consented to the entry of Defendant into her home.

Whether Defendant violated Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure depends in part upon whether Plaintiff consented to Defendant's entry. Payton, 445 U.S. at 576 (holding that absent exigent circumstances or consent, warrantless entry into a home for the purpose of search or seizure of property or person is presumptively unconstitutional under the Fourth Amendment). If Plaintiff consented to Defendant's entry and he was invited into the home, then his entrance into her home was not presumptively unconstitutional. If Defendant lied to Plaintiff about the existence of a warrant in order to gain entry, this lie vitiated any consent Plaintiff gave to his entry and the entry is presumptively unconstitutional. Plaintiff's consent is therefore material to the Fourth Amendment analysis. Thus, whether Plaintiff consented to Defendant's entry is a genuine issue of material fact in dispute, which precludes granting summary judgment in favor of either party.

### C. Punitive Damages

Defendant argues that the claim for punitive damages should be dismissed with prejudice because there is no evidence of outrageous conduct, which would support a punitive damage award. Although a plaintiff is prohibited from recovering punitive damages against a state official sued in his official capacity, "[a] § 1983 plaintiff . . . may recover punitive damages against an official sued in a personal capacity if the official acted with a malicious or evil intent or in callous disregard of plaintiff's federally protected rights." Bane v. City of Philadelphia, No. 09-2798, 2009 WL 6614992, at *15 (E.D. Pa. June 18, 2009) (citing Mitros v. Cooke, 170 F.

Supp. 2d 504, 508 (E.D. Pa. 2001)). Here, Plaintiff contends that Defendant acted with callous disregard of her Fourth Amendment right to be free from illegal search and seizure when he lied to her about having a warrant for her arrest and for the search of her home.

A reasonable jury may conclude that Defendant's actions were malicious or in callous disregard of Plaintiff's Fourth Amendment rights when he entered her home without consent and seized the dog after lying about the existence of the warrants. Therefore, whether to award punitive damages is a matter for the jury to determine.

**VI. CONCLUSION**

Genuine issues of material fact exist which preclude the Court from granting summary judgment in favor of either party. Moreover, Defendant is not entitled to qualified immunity for his actions in this case. The Court will deny the Motions for Summary Judgment in their entirety.

An appropriate Order follows.